**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL MALKOWSKI, | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 22-cv-006830 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Randall Malkowski ("Malkowski"), brings this action against Defendant, Illinois Department of Corrections ("IDOC"), alleging that on June 14, 2019, then-Acting Warden, Sherwin Miles ("Miles"), sexually harassed him, threatened to retaliate against him, and that he faced said retaliation from Miles and other supervisors after he reported Miles' behavior, in violation of Title VII. Presently before the Court is IDOC's Motion for Summary Judgment [74]. For the following reasons, the Court denies IDOC's Motion.

I. **Background**

A. **Factual Allegations**

The following material facts are not in dispute unless otherwise noted.

IDOC is an Illinois state agency that operates prisons throughout the state of Illinois, including Stateville Correctional Center ("Stateville"), which includes a maximum-security facility ("Stateville Maximum Security"), the male intake and processing unit for the state of Illinois, Northern Reception and Classification Center ("NRC"), and Stateville Minimum Security Unit ("MSU"). Malkowski is an Illinois resident who works as a Correctional Officer at Stateville.

i.   *Malkowski's and Miles' Employment History*

Malikowski was hired as a Correctional Officer by IDOC on May 8, 1995. Between 1999 and 2014, IDOC promoted Malkowski to several positions with increasing levels of responsibility: Seargent, to Lieutenant, to Major/Shift Supervisor. During Malkowski's 25-year tenure at IDOC, the only discipline Malkowski received was two oral warnings for incidents which occurred in 2016 and 2017, and a 5-day suspension for an incident which occurred later in 2016. In his performance review, just prior to the alleged sexual harassment Malkowski complains of, Malkowski's supervisor indicated that in 8 out of 10 areas of performance, Malkowski exceeded expectations and met expectations in the remaining 2.

Miles began working as a Correctional Officer for IDOC in 1998. In 2019, she assumed the role of Acting Warden of Stateville, a position that she held until July of that year. As Acting Warden of Stateville, Miles had supervisory authority over Malkowski. Before she became Acting Warden of Stateville, Miles was never Malkowski's direct supervisor.

ii.  *June 14, 2019, Incident and Report*

On June 14, 2019, Miles called Malkowski to report to her office. According to Malkowski, when he arrived, Miles opened the door and ordered him to sit down. Miles closed the door and then closed the door that exits to a washroom and the Executive Secretary's office. Miles then asked Malkowski the following questions: (1) "How often does Sgt. R. Knazze give you pussy?" (2) "Does Sgt. R. Knazze suck your dick?" (3) "Do you have intercourse with Sgt. Knazze?" Malkowski responded that his personal life was none of Miles' business and asked her to stop her questions. Miles went on to further ask questions including "Do you eat pussy?" Malkowski did not respond. Miles then said, "maybe you should seek out one of these girls around here to give you some so you wouldn't be the way you are." After Malkowski asked Miles to stop this behavior again, she informed

2

him that she would retaliate if he reported her and that she could use assignments as punishment, saying "I can put you in shit." IDOC disputes the entirety of this interaction.

Malkowski states, and IDOC disputes, that he immediately attempted to discuss the incident with his supervisor, which he claims he was able to do a few days later. On July 16, 2019, Malkowski filed a report, or a "434' form,[1] with Deputy Director Randy Pfister regarding the June 14, 2019, incident.

### iii. *Alleged Retaliation*

#### a. Retaliation by Williams and Miles

On July 18, 2019, Miles stated in a meeting where Malkowski was present "it's a sad day when you take a harassment 434 to your boss's boss." Two days after that statement, on June 20, 2019, Assistant Warden of Operations, Darwin Williams ("Williams"), signed a referral for counseling or discipline against Malkowski for an "incident" which allegedly occurred on June 14, 2019, the same day Miles allegedly sexually harassed Malkowski. Miles, as acting warden, signed and concurred with the referral.

On October 3, 2019, Miles changed Malkowski's job assignment and gave his shift assignment to a junior major, Regina Coles. Miles transferred Malkowski's to X house, which houses violent inmates, prisoners segregated from the regular population, and inmates who do not comply with the rules and regulations of the penitentiary. Malkowski alleges Randy Pfister, Deputy Director of the Northern District for IDOC, told Malkowski he made this change at Miles' direction.

After his transfer Malkowski was moved to a non-administrative role and reported directly to Williams. Because of this change, Malkowski's weekly pay was decreased since he no longer received five hours of "shift prep pay" per week that he was entitled to as an administrative Shift Commander.

---

[1] Incident Reports are commonly referred to as "434s" because the identification number of the document is "DOC 0434."

Malkowski alleges, and IDOC denies, that Williams told Malkowski that his transfer to X house was "humiliating."

### b. Retaliation by Edward Jacob

On July 16, 2020, IDOC promoted Edward Jacob ("Jacob") to the position of Acting Assistant Warden of Operations for Stateville Maximum Security, making Jacob Malkowski's immediate supervisor. Miles is Jacob's son's godmother.[2] Malkowski testified that at some point prior to his promotion, Jacob confronted Malkowski and told him that he "lied on his 434s" about Miles.

Within weeks of Jacob's start as Acting Assistant Warden of Stateville, and shortly after his comments about Malkowski's 434 reports against Miles, Malkowski alleges Jacob began to issue a series of Referrals for Discipline to Malkowski, for alleged incidents in July and August of 2020. One of these Referrals, for hiring correctional officers without authorization, resulted in a suspension recommendation of 10 days.

### c. Retaliation by Charles Truitt

Charles Truitt ("Truitt"), who served as the Assistant Warden of Operations at NRC while Jacob was his counterpart at Stateville, issued two Referrals for Counseling or Discipline to Malkowski in June of 2020: one for submitting improper overtime requests on June and one for failing to follow up after the report of an unusual incident involving an individual in custody on July. According to Malkowski, Truitt told him that he signed the Referrals at Jacob's direction.

At his Employee Review Hearing for the improper overtime Referral in June, Malkowski presented evidence to dispute the charge to Hearing Officer Nicolette Duffield ("Duffield"). Duffield found Malkowski guilty and recommended a 3-day suspension. At his second Employee Review

---

[2] Hereinafter the court will refer to this relationship as a "quasi-familial relationship." Quasi-familial relationships are social ties that resemble family relationships but are not based on kinship. Examples include stepfamilies, godparents, and close friends who take on familial roles.

Hearing, for the July incident, Duffield again found Malkowski guilty and recommended a 5-day suspension.

### iv. Malkowski's 2020 Grievances

After receiving these negative determinations, on September 28, 2020, and October 5, 2020, Malkowski filed a grievance with IDOC challenging the discipline issued at his Employee Review Hearings. As a result of these grievances, his three-day suspension was expunged, and his 5-day suspension was reduced to an oral reprimand. On September 29, 2020, Malkowski also filed a grievance with his union stating that he continued to be subject to harassment because of his complaints against Miles. Finally, on December 2, 2020, James Yrkoski, an attorney representing Malkowski, sent Rob Jeffries, Acting Director of IDOC, a memorandum alleging that "a group of people "have been coordinating efforts to bring frivolous actions against Malkowski as retaliation and are creating a hostile work environment for Malkowski for reporting sexual harassment by Miles." The memorandum also stated that this harassment was negatively impacting Malkowski's health.

### v. Continued Retaliation by Jacob

Despite reporting his supervisors and the threat of legal action, Malkowski alleges he continued to face negative treatment from Jacob. Specifically, Malkowski alleges Jacob "constantly yelled at and berated" him. For example, Malkowski alleges Jacob "yelled" at Malkowski in a meeting with the Warden, several acting wardens, and other personnel On January 4, 2021, and yelled at him again on January 7, 2021. While IDOC admits Malkowski reported "berating" "verbal remarks" from Jacob between January 4 and January 21, 2021, IDOC disputes that these remarks rose to the level of "yelling."

In a different incident, on January 6, 2021, Malkowski was directed by Assistant Warden Darwin Williams to generate a Corrective Action Plan ("CAPS") for an incident from the previous day. Malkowski never prepared a CAPS prior to this ask, and to his knowledge, only wardens were

5

trained to prepare CAPS. Jacob told Malkowski he will "poke holes in all [Malkowski's] work" and forced him to redo the report six times. Malkowski alleges the incident caused him sleeplessness, elevated blood pressure, and elevated heart rate.

On January 13, 2026, Jacob informed Malkowski that he would be changing his assignment to a different unit, his third reassignment within a four-month period. Prior to reporting Miles sexual harassment, Malkowski had only been reassigned twice in his entire career: once in 2016 after a promotion, and once in 2018. When Malkowski asked Jacob when the new assignment would begin, Jacob screamed "[y]ou will see it when it comes out on the Major's coverage" in front of other staff. His role was then given to an employee with less seniority than him: Major Regina Coles.

Malkowski also alleges Jabob repeatedly ignored Malkowski's vacation requests, refusing to approve or deny them within the requisite five-day period outlined in his collective bargaining agreement ("CBA"). On April 29, 2021, Malkowski filed an Incident Report alleging that his requests for time off were ignored by Jacob in retaliation for his protected activity. On Friday, June 11, 2021, Warden David Gomez ("Gomez") emailed an Affirmative Action Officer as part of the investigation stating Malkowski was over the allowable vacation time to carry over and intentionally waited to submit the slips for a time when they would have been denied because of the amount of approved time off already taken by other majors. After Malkowski filed the Incident Report, Gomez officially disapproved all of the vacation requests. Malkowski was not allowed to take the desired vacation time but was paid out for that time in accordance with the CBA's requirements.

i.    *Malkowski's 2021 Grievances*

Throughout the first half of 2021, Malkowski filed numerous grievances against Jacob, alleging that he was being constantly reassigned and denied time off as retaliation for reporting Miles.

6

Malkowski also reiterated that this negative treatment by Jacob, who is Miles' quasi-family member, was affecting his health.

The IDOC Office of Affirmative Action investigated Malkowski's claims against Jacob. In his investigative interview, Jacob stated that he was "mandated" by Warden Gomez to change Malkowski's shift assignment. Gomez, by contrast, stated that he had no recollection of telling Jacob to remove Malkowski from his position. The report concluded that Jacob's denial of vacation days was a union matter and made "no findings as to the validity" of Malkowski's claims of retaliation or harassment by Jacob.

<i>ix.      Procedural Posture</i>

On December 21, 2021, Malkowski filed a charge of discrimination against IDOC with the IDHR (IDHR Charge No. 2022- CF-0652) and cross filed his charge with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No. 21B-2022-00233). The IDOC dismissed Malkowski's charge on September 2, 2022, and the EEOC issued Malkowski a Notice of Right to Sue on December 2, 2022. Malkowski filed his initial complaint with this Court on December 5, 2022, and filed his Amended Complaint ("Complaint") on March 14, 2024, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)).

## B. Remaining Disputed Facts

IDOC also raises objections to certain statements proffered by Malkowski on the basis that they are improper testimony or based upon inadmissible hearsay. "[T]o be considered on summary judgment, evidence must be admissible at trial…" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). The Court therefore addresses the admissibility of the contested facts and determines how those facts can be considered for purposes of resolving this Motion.

7

*i.    Statements Made by Williams, Brown, and Truitt*

IDOC objects to multiple statements of fact proffered by Malkowski on the basis that they are inadmissible hearsay. First, IDOC objects to Malkowski's statement that "Sherwin Miles forced him to sign" a discipline referral on June 20, 2019. Second, IDOC objects to Malkowski's statement that he believed Malkowski's assignment to X house was "humiliating." Third, IDOC objects to Malkowski's statement of fact that "Truitt told Malkowski that Jacob directed him to sign the Referral[s] for Discipline" throughout 2020.

Statements offered against an opposing party are definitionally not hearsay if made by a party's "employee" about a matter within the scope of employment, as long as the declarant was an employee when they made the statement. Fed. R. Evid. 801(d)(2)(D). In cases involving adverse employment actions, an employee need not have been personally involved in the action, but her duties must encompass some responsibility related to "the decision-making process affecting the employment action." *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007). Because all three statements come from IDOC employees, within the scope of their work for IDOC, and are presented as evidence for adverse actions against Malkowski, the statements are definitionally not hearsay and can be considered for purposes of summary judgement. *See Boutros v. Avis Rent A Car Sys.*, LLC, 802 F.3d 918, 924 (7th Cir. 2015) (out-of-court statements were admissible when presented as evidence of employer's reasons for adverse actions against plaintiff).

*ii.    Allegations against Gordon*

IDOC also takes issue with an assertion by Malkowski's that he "learned that Officer Diamond Gordon [a corrections officer and Miles' goddaughter] encouraged several staff members to file false incident reports against" him on the grounds that this fact is not supported by the record and based on inadmissible hearsay. To the extent what he "learned" came from the unoffered statements of others, those statements are not admissible. "Hearsay within hearsay is not excluded" if "each part of

8

the combined statements conforms with an exception" to the rule against hearsay. Fed. R. Evid. 805. While such a statement, directly from Gordon, would normally qualify as a non-hearsay statement by a party's employee, the statement, as proffered, does not conform with the exception since it is unclear who he learned this information from or whether they made those statements within the scope of their employment. Accordingly, the fact that Malkowski' "learned that Officer Diamond Gordon encouraged several staff members to file false incident reports against" him, will not be considered for purposes of summary judgement.

With these material issues addressed, the Court now turns to its ruling on the merits of IDOC's Motion.

## II.      Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

## III.      Discussion

Title VII's antiretaliation provision "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." 42 U.S.C. § 2000e-3(a). "To establish a ... retaliation [claim] under Title VII, [a

plaintiff] must show: (1) [they] engaged in a statutorily protected activity, (2) [their] employer took a materially adverse action against [them], and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). The Seventh Circuit has recognized that internal reporting of sexual harassment is a statutorily protected activity under 42 U.S.C. § 2000e–3(a). *See Rizzo v. Sheahan,* 266 F.3d 705, 715 (7th Cir.2001).

In its Motion, IDOC asserts that Malkowski's claims are untimely because there is no evidence of any actionable retaliation against Malkowski during the 300-day period before he filed his charge of discrimination. (Dkt 75 at *1.) IDOC also asserts that Malkowski's claim fails on the merits since he points to no statements, documents, conversations, or suspicious timing that would allow the Court to infer that any of the retaliatory acts alleged in his Complaint were related to his report of sexual harassment. *Id.* Malkowski, by contrast, asserts the Court should deny summary judgment because the evidence, when construed most favorably to him, shows that his claim is timely under the continuing violation theory and because the comments made by the perpetrators, the timing of the perpetrators conduct, and IDOC's pretextual explanation for its adverse actions, amply demonstrate a causal connection between the harassment he faced and his protected activities. (Dkt. 85 at *1-2.)

The Court will address the merits of these arguments in turn.

### A. Timeliness of Malkowski's Claim

IDOC argues Malkowski's Title VII claim, that is based on actions before February 24, 2021, is time-barred. (Dkt. 75 at *8.) Under Title VII, a plaintiff has up to 300 days after an alleged adverse employment action to file a charge of discrimination with the EEOC or state fair employment practices agency. 42 U.S.C. § 2000e-5(e). Each discrete discriminatory act, such as termination, failure to promote, denial of transfer, or refusal to hire, "starts a new clock for filing charges alleging that act," and only those acts occurring within 300 days of a filing are actionable under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-114 (2002); *Brown v. Illinois Dept. of Natural Resources*,

10

499 F.3d 675, 680 (7th Cir. 2007). While Title VII plaintiffs raising claims of discrete discriminatory or retaliatory acts must file a charge within the appropriate 300–day period, a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *See Morgan*, 536 U.S. at 101. "[T]he theory is that '[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Swanson v. Village of Flossmoor*, 794 F.3d 820, 826 (7th Cir.2015) (quoting *Morgan*, 536 U.S. at 117); *Barrett v. Illinois Dept. of Corr.*, 803 F.3d 893, 898–99 (7th Cir. 2015). Therefore, for Malkowski's claim to survive summary judgment, the Court must determine his allegations are part of the same, unlawful employment practice, or "continuing violation," and that at least one of the retaliatory actions alleged fell within the filing period.

IDOC argues, because Malkowski filed his EEOC charge on December 21, 2021, his charge was only timely as to the alleged adverse employment actions occurring on or after February 24, 2021. (Dkt. 75 at *9.) Any alleged unlawful actions occurring prior to that date, including any purported actions of Miles and Jacob, IDOC argues, are untimely. *Id.* IDOC emphasizes that Malkowski was unquestionably aware of the various alleged disciplinary actions and other purported employment actions he experienced prior to that date, as they were detailed in his internal complaints, grievances, and threats of legal action in 2020. According to IDOC, any argument that his claims are timely under the continuing violation doctrine, also fail, because the evidence shows that the allegedly retaliatory acts that occurred within the Filing Period are discrete, identifiable, and isolated acts that do not support a hostile work environment claim. (Dkt. 86 at *2.) IDOC asserts the continuing violation doctrine is not meant to address serial, loosely connected violations, but is instead meant to be applied when, for example, the first instance of a coworker's offensive words or actions are too trivial to count as actionable harassment, but if they continue, they may eventually reach a level where the entire series is actionable. *Id.* at *3 (citing *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir.

11

2008) (the continuing violation doctrine is "a doctrine not about a continuing, but about a cumulative, violation.")). The IDOC argues because Malkowski has been aware of and complaining about alleged sexual harassment and retaliation since July 19, 2019, and because the subsequent alleged retaliatory acts in question are discreet and identifiable, the IDOC argues they should not be considered cumulatively.

Malkowski, by contrast, argues the hostile work environment and retaliation he experienced after he reported Miles should be considered a cumulative, unlawful employment practice. As long as one of the retaliatory acts happened within the Filing Period, the entire period of the hostile environment may be considered for purposes of determining liability. (Dkt. 85 at *9.) Here, Malkowski argues, incidents which were part of the ongoing retaliatory harassment include Jacob's refusal to respond to Malkowski's requests for time off work in March 2021, denials by other supervisors in 2022, and negative treatment in 2023, making the entire period of the retaliatory and hostile work environment timely for purposes of suit. (*Id.* at *9-10.) Malkowski concludes, because at least one act happened within the Title VII Filing Period, this Court may consider the entire period of the hostile environment for purposes of determining liability. (Id. at *10.)

The Court will not foreclose Malkowski's claims as untimely because a reasonable jury could conclude that one of the acts after the Filing Period contributed to and continued his hostile and retaliatory work environment that began prior to the Filing Period. Both parties concede the continuing violation doctrine permits "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period so long as an **act** contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. 101, 105 (2002). The continuing violation theory is a vehicle for Malkowski to put the 2019 and 2020 incidents, as well as incidents that occurred after February 2021, before the jury for a full evaluation of his hostile work environment. While the parties may disagree on whether the

alleged retaliatory acts within the Filing Period are connected to the original sexual harassment allegation and ongoing hostile work environment, a jury could conclude that such acts were indeed connected. Especially here, where Malkowski filed grievances well into the filing period detailing negative treatment from one of Miles' quasi-family members and colleagues as retaliation for his initial grievance against her. Alternatively, a jury could conclude that the acts after February 2021 are too attenuated to be connected to his original sexual harassment and retaliation claims. Deciding which scenario is likelier, however, is best left for the trier of fact.

Accordingly, the Court denies IDOC's Motion for Summary Judgement on the grounds that Malkowski's claim is untimely.

### B. Merits of Malkowski's Claim

Having determined Malkowski's claim is timely, the Court now addresses the merits of his claim. Since the Court has established, and the parties agree, that internal reporting of sexual harassment is a statutorily protected activity under 42 U.S.C. § 2000e–3(a), the Court's analysis will be limited to whether IDOC took a materially adverse action against Malkowski and if there is a causal link between the protected activity and the adverse action.

#### i. *Materially Adverse Action*

Discriminatory acts proscribed by Title VII's anti-retaliation provision are not limited to those that affect the terms and conditions of one's employment; an employer's challenged action just must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

IDOC argues that verbal reprimands, denial of time-off requests, and changes in work assignments, do not rise to the level of actions preventing Malkowski or others from engaging in protected activity. (Dkt. 75 at *10.) In fact, IDOC emphasizes, Malkowski consistently reported any

"perceived slight" and went on to file his charges with the IDHR and EEOC, evidencing that he was not dissuaded from engaging in protected activity. (Dkt. 75 at *10.) Malkowski, by contrast, argues that the retaliatory acts he experienced easily qualify as adverse employment actions. Specifically, Malkowski emphasizes that he was switched to a non-administrative role, for less pay, after reporting harassment, "berated" by multiple supervisors, suspended for meritless write-ups, and repeatedly denied time-off. (Dkt. 85 at *12). Additionally, Malkowski documented medical responses to his alleged hostile work environment, including sleeplessness, elevated blood pressure, and elevated heart rate, further evidencing material harm from his hostile work environment. (*Id.* at *12-13).

The Court believes that Malkowski has provided sufficient proof of an adverse employment action to survive summary judgment. While discrimination claims require a "heavier burden" involving "a significant change in employment status, and often involve the employee's current wealth, career prospects, and working conditions," "less severe" conduct is sufficient to maintain a retaliation claim. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 804 n. 3 (7th Cir. 2016). Plaintiff provides evidence of numerous adverse employment actions that suffice for the higher standard, and at minimum, suffice for a retaliation claim. Malkowski was switched to a non-administrative role, for less pay, after reporting harassment, "berated" by multiple supervisors, suspended for meritless-writeups, repeatedly denied time-off, and as a result, experienced declining health. Any of those actions, and definitely the combination of them all, would dissuade the average worker from reporting sexual harassment, retaliation, or a hostile work environment. *See id.* (holding allegations of screaming, false disciplinary reports, exclusion from social functions, and denial of time off "would certainly cause a reasonable worker to think twice about complaining about discrimination."); *Whittaker v. Northern Illinois University*, 424 F.3d 640, 647 (7th Cir. 2005) (noting that a suspension without pay would constitute an adverse employment action for a retaliation claim).

14

These alleged adverse employment actions, coupled with Malkowski's documented health decline, more than suffice to survive summary judgement.

       *ii.    Causal Link Between Adverse Action and Protected Activity*

To establish the required causal connection required for a finding of retaliation, Malkowski must demonstrate that his protected activity was a "but-for cause" of the challenged employment actions. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n. 1 (7th Cir.2014). Absent direct evidence of retaliation, a plaintiff can establish causation through circumstantial evidence such as (1) evidence of "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn"; (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; and (3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 8603 (7th Cir. 2012), (citation and quotation marks omitted).

IDOC argues that there is no evidence that Jacob's delay in approving or disapproving of Malkowski's vacation requests in 2021 were in any way connected to Malkowski's complaint against Miles in 2019. (Dkt. 75 at *12.) IDOC also maintains that any relationship between Miles and Jacob is "speculative," and even if it weren't, such a social relationship does not support an inference of retaliation (*Id.*) (citing *Nachampassack v. Illinois State Toll Highway Auth.*, 18-CV-00509, 2022 WL 952356, at *16 (N.D. Ill. Mar. 30, 2022) (Valderrama, J.). While IDOC admits that Jocob made an "isolated" comment in 2020 that he believed Malkowski' lied about sexual harassment, several months and years passed between that comment and the later alleged retaliatory conduct, making a causal connection, unlikely. (*See* Dkt. 75 at *12.) Finally, IDOC argues that given Malkowski's "revolving door of

supervisors" the facts do not allow for a finding of continuous, unbroken harassment by IDOC. (Dkt. 86 at *10.)

Malkowski maintains that he has at least raised an inference that Miles and Jacob engaged in conduct to retaliate against him. (Dkt. 85 at *13). Specifically, Jacob's statement that Malkowski "lied on your 434's about Sherwin Miles" is strong circumstantial evidence that Jacob's had a motive to retaliate. *Id.* Miles, on the other hand, allegedly evidenced her motive to retaliate by directly stating she would do so, and furthermore, made good on her threat to put him in "shit" by soon thereafter changing his position. *Id.* Then Jacob, who admitted Miles was the godparent to his child, inundated Malkowski with multiple discipline referrals immediately after becoming his supervisor. (*See id.* at *14.) Finally, Malkowski disagrees with IDOC's legal conclusion that Jacob and Miles' personal relationship cannot support an inference of retaliation, because lesser relationships have sufficed to maintain a retaliation claim by a court in the Northern District of Illinois. (*Id.* at *15) (citing .*Sanders v. Chicago Transit Auth.*, 19-CV-04656, 2020 WL 5253867, at *2 (N.D. Ill. Sept. 3, 2020) (Chang, J.) (holding bullying by friends of target of a complaint can be an adverse employment action for purposes of a retaliation claim).

Here, where Malkowski relies on a continuing violation theory, the Court will not foreclose inferences of a causal link. As an initial matter, according to Malkowski, Miles explicitly stated her intention to retaliate after he declined her sexual advances. Soon after reporting her, he lost his administrative position and faced a decrease in pay. Additionally, Jacob's intention to retaliate can be inferred from his statement that Malkowski "lied" in his report against Miles, and by the timing of numerous disciplinary reports Jacob filed against or sanctioned against Malkowski. IDOC's reliance on *Nachampassack*, is misplaced, because there, the court refused to impute retaliatory actions on an individual who was not the target of a complaint because the plaintiff could not substantiate that the target and alleged wrongdoers were actually friends. *Nachampassack*, 2022 WL 952356 at *16. Here,

16

by contrast, Jacob's admits to his quasi-familial relationship with Miles and Miles' relationship with his child, one that likely still exists to this day, and at minimum, creates an inference of his motive to retaliate.

Furthermore, IDOC's argument assumes precisely what is in question. While IDOC argues that the Court should accept that all the alleged adverse employment actions were not in retaliation for his protected activity, Malkowski maintains the exact opposite. Based on the evidence before the Court, Malkowski has, at minimum, established a triable issue of fact on the causal link between these adverse actions.

## IV. Conclusion

For the foregoing reasons, the Court denies IDOC's Motion for Summary Judgement on Malkowski's Title VII claim.

IT IS SO ORDERED.

Date: 3/24/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

17